### INHABITANTS OF PLYMOUTH *vs.* RUSSELL MILLS.

If an award has been made for damages sustained by the proprietors of a mill, situated upon the outlet of a natural pond, in consequence of the appropriation, by a town, of water from the pond for the supply of water works, under authority of the legislature, and it subsequently appears that the outlet continues to be as well supplied with water as it was before, notwithstanding this additional use, the town cannot maintain a bill in equity to set aside the award on the ground that this newly discovered evidence shows that the proprietors sustained no damages, and that they had prevented this fact from being known at the time of the hearing, by wrongfully deepening the outlet prior thereto, if the bill also alleges that for a period of eleven months before such deepening of the outlet, during the whole of which time water was taken from the pond for the water works, the water continued to flow through the outlet without perceptible diminution.

An unexplained delay of more than four years after the discovery of new and material evidence is such laches as will defeat a bill in equity to set aside an award on that ground.

BILL IN EQUITY, filed October 25, 1862, alleging that there are in the town of Plymouth two natural ponds, called the Great South Pond and the Little South Pond, separated from each other by a narrow strip of land, about five hundred feet in width; that in 1855 the town of Plymouth, by their water commissioners, acting under the authority of *Sts.* 1854, *c.* 351, and 1855, *c.* 61, for the construction, maintenance and supply of an aqueduct, as therein provided, tapped Little South Pond, by the insertion of a ten inch pipe leading to the village of Plymouth, for the supply of water to the inhabitants thereof; that in July 1855 the water commissioners made a canal between said ponds, and thus connected them, for the purposes of said water works; that under said statutes the town acquired the right to take as much water from said Great South Pond as might be necessary to supply said ten inch pipe; that there was a natural outlet from the Great South Pond, running into the stream which, with others, supplied the mill of the defendants; that the bottom of the canal so made was four and one half inches lower than the bottom of the natural outlet; that in November 1855 the water was permanently let through the canal; that from this time to October 1856 the water continued to flow through the natural outlet of the Great South Pond without material or

perceptible diminution thereof; that in October 1856 the defendants deepened the outlet so as to draw down the whole of the Great South Pond, and to leave the canal perfectly dry, and more than a foot above the level of the water; that the defendants had not water enough, during the time they were thus drawing down the pond, to run all the machinery of their mill, and that their mill had not then been fitted with all the machinery for which it was intended; that in July 1857 the plaintiffs placed a barrier at the outlet, on the shore, at the height of the outlet as it was at the time when the canal was made; that on the 30th of October 1857 the defendants filed a complaint, under the statutes above cited, to the county commissioners, praying that the latter would estimate and assess the damages sustained by them, upon which complaint, after a hearing, the county commissioners, on the 8th of January 1858, estimated and assessed upon the plaintiffs the sum of $15,061.33, as damages sustained by the defendants, with costs; that the defendants claim to treat this as a valid award, and have commenced an action upon it against the plaintiffs, which is now pending in this court; that at the hearing before the county commissioners the defendants offered no evidence of the exercise of any claim of right to deepen the outlet of the Great South Pond, prior to October 1856, and that no such right exists; that the complaint by the defendants was filed while the pond was drawn down, and the commissioners were called upon and required to make their award on or before January 8, 1858, and within six months of the time when said barrier was erected by the plaintiffs; that at the said hearing the pond was rising, and had risen so as to flow through the canal, but not to the height of the barrier, and the defendants contended that it never would rise to that height, so long as the water works were continued; that the county commissioners awarded damages wrongfully for the whole water and water power of said pond, as appears by their answers to two several petitions for a mandamus, copies of which were annexed; that in point of fact the whole water and water power of said pond was not taken, but only a small and imperceptible portion, if any; that on or about the 23d of February

1858 two of the county commissioners who sat at the hearing viewed the premises again, and became satisfied that there was no loss of water through the outlet by reason of the acts of the plaintiffs; that the pond was then still rising, and on or about the 1st of March 1858 it began to overflow the barrier, and has overflowed it ever since, and flowed in greater quantity and with more steadiness than it has ever been known to do before; that the defendants, by their said tortious act in deepening the outlet, wrongfully destroyed the only accurate and reliable evidence of the diminution of water in said pond, and fraudulently misled the commissioners; that the filling up of the pond since the hearing has presented new evidence, which could not be had before the commissioners, and which was then unknown to the plaintiffs, and has been newly discovered since; and that the defendants fraudulently, and against conscience, right and justice, now seek to enforce the award, which is illegal and void, or, if legal in form, is oppressive, and was obtained by a practical fraud upon the plaintiffs, and was rendered under a mistake of facts. The prayer was that the defendants might be enjoined from the prosecution of their action, and from assigning the award, and that the award might be declared null and void, and for further relief.

The defendants filed a general demurrer, which was overruled, and they appealed to the whole court.

*B. R. Curtis & W. G. Russell,* for the defendants. It is perfectly plain that the defendants sustained damages, because, when they had the full supply of water that the pond would yield, they had not enough; and this supply has been diminished by just so much as will run through a ten inch pipe. The questions to be tried, therefore, were, 1st, How much water the town would take; and 2dly, How much this injured the defendants. The evidence alleged to have been destroyed had no bearing upon the main question, how much water will run through such a pipe, but only upon the question how much water was left in the pond. But even if it did bear upon the main question, the plaintiffs had the benefit of the fact of the destruction of evidence, at the hearing, and the commissioners must

nave given due weight to it. If they made a mistake, it was a mere mistake of judgment. *Boston Water Power Co.* v. *Gray*, 6 Met. 131. It was also known then that the pond was steadily rising, and that from November 1855 to October 1856 the water continued to flow through the outlet without perceptible diminution. Thus during all that period they had before their eyes precisely the fact which they now allege that the act of the defendants prevented them from putting in evidence, namely, that notwithstanding their taking of water the amount which flowed through the outlet was not diminished. The newly discovered evidence, therefore, was merely cumulative. *Gardner* v. *Gardner*, 2 Gray, 434. *Palmer* v. *Fiske*, 2 Curtis C. C. 14, 19. *Simpson* v. *Hart*, 1 Johns. Ch. 91. *Lansing* v. *Eddy*, Ib. 49. *Woodworth* v. *Van Buskerk*, Ib. 432. *Duncan* v. *Lyon*, 3 Johns. Ch. 351. *Foster* v. *Wood*, 6 Johns. Ch. 87. *Titcomb* v. *Potter*, 2 Fairf. 218. The plaintiffs have been guilty of such laches as will forfeit their title to equitable relief. [The defendants urged various other reasons why the demurrer should be sustained.]

*B. F. Thomas & C. G. Davis*, for the plaintiffs. The award of damages was clearly the result of mistake, and it is against conscience to enforce it. There is no doubt of the power of the court to enjoin parties from executing a judgment. Gen. Sts. c. 112, § 3; c. 113, § 2. It is said, if the commissioners made a mistake it was a mistake of judgment. But the vital fact was wanting, by which their conclusion should have been directed, and that fact was taken from us by the wrongful act of the defendants. The whole question in the case was, as to the proper amount of damages. To deny relief on the ground that the damages were excessive would therefore be to deny relief altogether. The jurisdiction in equity to enjoin judgments, when newly discovered evidence shows their injustice, is not obsolete. Especially in cases where new trials cannot be had, it exists in all its force. See *Ocean Ins. Co.* v. *Fields*, 2 Story R. 59. *Floyd* v. *Jayne*, 6 Johns. Ch. 479. *Carrington* v. *Holabird*, 17 Conn. 530. *Jarvis* v. *Chandler*, Turn. & Russ. 319. The facts in the present case present two grounds for the exercise of this power : 1. The destruction by the defendants of the

only reliable evidence; and 2. The filling up of the pond after the hearing. The defendants recovered an award of a large amount for the diminution of the water at the outlet. But four and one half years' experience has shown that there has been no such diminution. This new evidence was not merely cumulative, but different in kind. *Ocean Ins. Co.* v. *Fields*, 2 Story R 59. See also 2 Story on Eq. §§ 887, 894, 897, and cases cited; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 332; *Truly* v. *Wanzer*, 5 How. (U. S.) 141; *King* v. *Baldwin*, 17 Johns. 384; *Gainsborough* v. *Gifford*, 2 P. W. 424; *Williams* v. *Lee*, 3 Atk. 223. This is in substance a bill for a new trial. The ground for such bill, after judgment in a court of law, must be only such as would be ground for a bill of review of a decree in equity, upon the discovery of new matter. 2 Story on Eq. § 888. *Clapp* v. *Thaxter*, 7 Gray, 384. *Wood* v. *Mann*, 2 Sumner, 324–334. *Dexter* v. *Arnold*, 5 Mason, 312–315. The new evidence is relevant and material; and, if known at the hearing, would have produced a different determination. It is new evidence upon the matter then in issue; not to make a new case, but to establish the old one. It first came to the knowledge of the plaintiffs after the time when it could have been used at the hearing.

MERRICK, J. This is, in effect, a petition to this court, in the exercise of its equity jurisdiction, for a new trial in a case heard and determined by the county commissioners for the county of Plymouth, upon a petition properly before them, upon the ground of newly discovered evidence. [The judge here recited the principal facts averred in the bill.]

To this application the defendants, in the first place, object that the alleged newly discovered evidence is merely cumulative, and therefore affords no ground for disturbing the award of the commissioners. And the allegations in the bill do in fact show that it does not relate to any point or ground of defence which was not taken and attempted to be maintained by the plaintiffs at the hearing, nor to any to which evidence, closely resembling and very similar in its character to that subsequently discovered, of which they certainly then had knowledge, was not applicable, which might have been, if it was not actually,

produced by them upon the trial. The proposition which they now assert, and which they propose to prove by showing what actually occurred between March 1858, when the water had risen to the height of the natural outlet, and the time of the filing of their bill, is, that there was no loss or diminution of the quantity of water running through the outlet and down the brook below, in consequence of the acts of the town in maintaining and using their aqueduct in the manner and for the purpose for which it was constructed ; and consequently that no injury, or at most only a merely nominal injury, has occurred thereby to the defendants' mills. That is precisely the ground of defence which they assumed and endeavored to establish at the trial before the county commissioners. And by the allegations in the bill they now show, in substance, that after their aqueduct was completed and in use, and was arranged to be permanently supplied with water brought to it from the Great South Pond through their said canal, the water, for a period of eleven months, from November 1855 to October 1856, when the defendants unlawfully and tortiously dug down and deepened the outlet and the brook below it, continued to flow from the pond without producing any material or perceptible diminution of the natural stream which had formerly flowed from it. Thus it appears that the alleged newly discovered evidence tends only, so far as it relates to the question in controversy between the parties, to prove exactly the same fact which the evidence concerning the use, appropriation and flow of the water of the pond from November 1855 to October 1856 tended in the like manner to establish, namely, that the quantity of water withdrawn from the pond and diverted from its natural course by the plaintiffs through their aqueduct was so inconsiderable that it caused no material or perceptible diminution of the stream or brook below the outlet, and so could not have been the occasion of any appreciable loss of power to the defendants in the working and operation of their mills. It was therefore merely cumulative, and for that reason, upon the settled and familiar rule of law concerning such evidence, it affords no sufficient or legal cause for setting aside a verdict or award, and granting a new trial.

*Gardner* v. *Mitchell*, 6 Pick. 114. *Yarmouth* v. *Dennis*, Ib. 116, *n.* *Sawyer* v. *Merrill*, 10 Pick. 16.

But the defendants further insist that the great delay of the plaintiffs in seeking to avail themselves of the alleged newly discovered evidence, for the purpose of obtaining a new trial, affords a controlling reason why the relief prayed for in the bill should not be granted. This objection is predicated upon the facts admitted by the parties, and it appears to us that it is decisive of the question before us, and that it must prevail. Laches is always discountenanced in equity, and in law it often constitutes a bar to claims which might otherwise be established. A person may therefore by his own laches deprive himself of a benefit or right to which, by the exercise of the requisite and proper diligence, he might have attained. Story on Eq. §§ 64 *a*, 771, 1520. *Lansing* v. *Eddy*, 1 Johns. Ch. 49. *Dodge* v. *Strong*, Ib. 228. *Barker* v. *Elkins*, Ib. 465. *Titcomb* v. *Potter*, 2 Fairf. 218. Thus, for instance, a party who, after a verdict or an award against him, has come to the knowledge of new and material evidence concerning the matters in issue, which he had no means of discovering at an earlier day, will in general be entitled to a new trial, upon application therefor to a tribunal competent to grant it; but he may lose this advantage by immoderate and unreasonable delay. For although the exact period within which his petition for such relief shall be preferred has not been limited or defined by any positive rule of law, it must certainly be done within a reasonable time. This is essential to the protection of the rights of the adverse party; for otherwise he might be subjected to serious inconvenience or irreparable loss, by having his attention diverted from the whole subject, in the confident expectation, justly entertained, that no attempt would ever be made to revive the controversy; or still more directly by being deprived by the mere lapse of time of evidence in his behalf which he either cannot, or has no reason to believe that he has any occasion to endeavor to, perpetuate and preserve. In cases somewhat similar to this the statute has prescribed a certain and positive rule of limitation. When judgment has been rendered upon the default of a defendant

upon whom no service has been made by reason of his being absent from the state, or of his residence being unknown, he may as of right sue out a writ of review at any time within one year after the judgment was rendered. And when a judgment in any civil action is rendered against a party in his absence and without his knowledge, he may be authorized by this court to sue out a writ of review upon petition therefor, if his petition shall be presented at any time within one year after the judgment, or within one year after it shall have come to his knowledge. Gen. Sts. *c.* 146, §§ 20, 21. Rev. Sts. *c.* 92, § 4; *c.* 99, § 17. In analogy to these provisions, and in view of the manifest reasonableness of such a limitation, it must be held that a new trial cannot, except for good cause shown, such for example as that it was impossible to act with greater promptitude, be granted on account of the discovery after trial and judgment of new and material evidence, unless the petition for such new trial is duly presented within one year after such discovery has been made. This gives to the petitioner ample time to make all requisite preparation for action on his part, and a fair regard to the rights of the adverse party requires that it should not be extended to any greater length.

In recurring again to the facts alleged in the bill, it appears that as early as the 1st of March 1858 the water in the Great South Pond had risen to such height that it then began to overflow the barrier placed at the outlet, and that ever afterwards, until the filing of the bill on the 25th of October 1862, it continued to overflow the barrier in greater quantity and with more steadiness than it had ever been known to flow there before the water works of the plaintiffs were constructed. Of all this the plaintiffs had knowledge; and therefore for four years at least prior to the filing of their bill they were fully acquainted with the facts which they set forth and rely upon as newly discovered evidence. This great delay has not at all been accounted for, or shown to have resulted from necessity, or to have been caused by any impediment which they could not have controlled. They have afforded no explanation concerning it. Nor would it, or ought it, in any degree to avail them to show that,

during a part of this intervening period, they were seeking for a remedy in the prosecution of other legal proceedings instituted for that purpose, if, after the close of those proceedings, and the rendition of final judgment therein, more than a year elapsed before the bill in the present case was commenced and filed in court. We are therefore satisfied that, if there were no other objection, this delay on the part of the plaintiffs was such laches as to preclude them from obtaining for the cause alleged the new trial for which they petition.

*Demurrer sustained and bill dismissed.*